UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEAMUS HOLDINGS, S.A., | Case No. 08 Civ. 5117 (SHS) |
| Plaintiff, | |
| v. | |
| PROJECTOR S.A. AND TRISTAR PETROLEUM S.A., | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANT TRISTAR PETROLEUM S.A.'S MOTION TO VACATE SUPPLEMENTAL RULE B(1) ATTACHMENT

Stanley McDermott III
Peri A. Berger
DLA PIPER US LLP
1251 Avenue of the Americas
New York, New York 10020
T (212) 335-4695
F (212) 884-8595
stanley.mcdermott@dlapiper.com

*Counsel for Tristar Petroleum S.A.*

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AET Inc., Ltd. v. Procuradoria De Servicos Martimos Cardoso & Fonesca,*
  464 F. Supp. 2d 241 (S.D.N.Y. 2006)...............................................................15

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,*
  460 F.3d 434 (2d Cir. 2006)....................................................................12, 14

*Chilean Line Inc. v. United States,*
  344 F.2d 757 (2d. Cir. 1965)....................................................................9, 11

*Consub Delaware LLC v. Schahin Engenharia Limitada,*
  476 F. Supp. 2d 305 (S.D.N.Y. 2007).......................................11, 12, 13, 14

*Cordoba Shipping Co., Ltd. v. Maro Shipping Ltd.,*
  494 F. Supp. 183 (S.D.N.Y 1980).................................................................10

*D/S A/S Flint v. Sabre Shipping Corp.,*
  228 F. Supp. 384 (S.D.N.Y. 1964), *aff'd*, 341 F.2d 50 (2d Cir. 1965)...........9

*Dolco Invs., Ltd. v. Moonriver Dev., Ltd.,*
  486 F. Supp. 2d 261 (S.D.N.Y. 2007)..........................................................15

*Greenwich Marine Inc. v. S.S. Alexandria,*
  339 F.2d 901 (2d Cir. 1965).........................................................................11

*Ice Flake Maritime, Ltd. v. Westcoast AS,*
  2007 WL 2979471 (S.D.N.Y. Oct. 11, 2007) ..............................................15

*Manro v. Almeida,*
  23 U.S. 473 (1825) ..........................................................................9, 12, 13

*Marine Transit Corp. v. Dreyfus,*
  284 U.S. 263 (1932) .....................................................................................11

## TABLE OF AUTHORITIES
(continued)

**Page**

*Mediterranea Di Navigazione SPA v. Int'l Petrochemical Group,*
   2007 WL 1434985 (S.D.N.Y. May 15, 2007).................................................15

*Navalamar (U.K.), Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.,*
   485 F. Supp. 2d 399 (S.D.N.Y. 2007).........................................................15

*OGI Oceangate Transportation Co. Ltd. v. RP Logistics Pvt. Ltd.,*
   2006 U.S. Dist. LEXIS 46841 (S.D.N.Y. June 26, 2007).............................6

*Polar Shipping v. Oriental Shipping Corp.,*
   680 F.2d 627 (9th Cir. 1982).....................................................................13

*Ronda Ship Mgmt. Inc. v. Doha Asian Games Organising Comm.,*
   511 F. Supp. 2d 399 (S.D.N.Y. 2007).........................................................15

*Sea Transport Contractors Ltd. v. Industries Chemiques de Senegal,*
   411 F. Supp. 2d 386...............................................................................11, 13

*Seamar Shipping Corp. v. Kramikovtzi Trade Ltd.,*
   461 F. Supp. 2d 222 (S.D.N.Y. 2006)...............................................13, 14, 15

*Seawind Compania, S.A. v. Crescent Line, Inc.,*
   320 F.2d 580 (2d Cir. 1963)..........................................................9, 11, 12, 13

*Sonito Shipping Co. v. Sun United Maritime Ltd.,*
   478 F. Supp. 2d 532 (S.D.N.Y. 2007)............................................................6

*Swift & Co. Packers v. Compania Colombiana Del Caribe,*
   339 U.S. 684 (1950) ......................................................................9, 12, 13

*The Anaconda v. American Sugar Refining Co.,*
   322 U.S. 42 (1944) .....................................................................................11

*Tide Line, Inc. v. Eastrade Commodities, Inc.,*
   2007 A.M.C. 252, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. July 6,
   2007)...........................................................................................................7

# TABLE OF AUTHORITIES
(continued)

Page

*Transportes Navieros y Terrestres, S.A. de C.V. v. Fairmount Heavy Transport N.V.*,
2007 WL 1989309 (S.D.N.Y. July 6, 2007) .....................................................6

*Winter Storm Shipping Ltd. v. TPI*,
310 F.3d 263 (2d Cir. 2002).........................................................10, 12, 14, 15

## STATUTES

9 U.S.C. § 8.................................................................................................11

N.Y.U.C.C. § 4-A-502 ..........................................................................14, 15

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

THE BACKGROUND FACTS ............................................................................. 2

ARGUMENT .................................................................................................... 6

    A.    Seamus Does Not Have a Prima Facie Maritime Claim Against
          Tristar ................................................................................................. 6

    B.    Seamus Cannot Use Supplemental Rule B(1) To Secure High
          Court Claims in London ....................................................................... 9

    C.    Tristar Did Not Have A Property Interest In The EFT ..................... 15

    D.    Seamus Should Pay Interest On The Attached Funds ....................... 18

CONCLUSION ............................................................................................... 18

## PRELIMINARY STATEMENT

Defendant Tristar Petroleum S.A. ("Tristar") respectfully submits this memorandum in support of its motion under Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions to vacate the attachment of funds ($220,020.29) ordered by the Court upon the application of plaintiff Seamus Holdings, S.A. ("Seamus") under Supplemental Rule B(1). Tristar makes a restricted appearance in accordance with Supplemental Rule E(8) and also submits the declaration of Salem Mounzer, its Managing Director and Chairman of its Board of Directors, ("Mounzer Decl."), explaining relevant facts.[1]

The attachment must be vacated on three alternate grounds:

(a) Seamus cannot discharge its burden under Supplemental Rule E(4)(f) to show it has a *prima facie* breach-of-contract claim against Tristar, a non-signatory of the charter-party contract in question;

(b) Seamus cannot use Supplemental Rule B(1) to secure claims to be adjudicated in the High Court in London, England; and

(c) Tristar did not have a property interest in the Electronic Funds Transfer ("EFT") in question when the EFT was attached at an intermediary bank en route to Tristar's bank.

---

[1]    Tristar also submits the declaration of Stanley McDermott III ("McD. Decl.") identifying relevant documents.

## THE BACKGROUND FACTS

Seamus is a Liberian ship owner and Tristar is a Swiss oil trader. The action concerns Seamus's claim for demurrage allegedly owed by a third party, defendant Projector S.A. ("Projector"), under a voyage charter between Seamus and Projector for Seamus's vessel the M/T Scorpios.

On June 4, 2008, Seamus filed a verified complaint against Projector and Tristar seeking to attach assets under Supplemental Rule B(1) to secure the demurrage allegedly owed to Seamus ($149,378.13). The voyage charter dated August 2, 2007 between Seamus and Projector is Exh. 1 to Seamus's complaint. Seamus's demurrage invoice to Projector dated October 23, 2007 is Exh. 3 to the complaint. Seamus commenced the action and sought the attachment to support claims to be filed (but apparently not yet filed) against the defendants in the High Court in London. *See* Complaint ¶¶ 17-18 (and the English-Law-and-Litigation terms of Charter Clause 8). Seamus sought to attach assets up to the sum of $220,020.29, including $45,000 of anticipated English fees and costs. (*Id.* ¶¶ 20, 22.)

On June 5, 2008, the Court granted an Ex Parte Order for Process of Maritime Attachment. On June 6, 2008, the Clerk issued the writ of attachment. On June 9, 2008, Deutsche Bank's New York branch restrained $220,050.29, part of an EFT from Sumitomo Mitsui Banking Corporation, the originator's bank, to

ING Bank in Geneva, Tristar's bank, for business unrelated to Seamus or Projector. (*See* McD. Decl. Exh. B.)

Seamus joined Tristar in the action and sought to attach its funds due to an unsigned addendum to the charter dated September 25, 2007 stating that "It is hereby mutually agreed to amend the Charterers style to read 'Tristar Petroleum S.A.' Projector always to be responsible for the fulfillment of the Charter Party." *See* Complaint ¶ 5. (A copy of the unsigned addendum (page 23 of Exh. 1 to the complaint) is appended for ready reference as McD. Decl. Exhibit A.) That unsigned addendum, on its face, is a nullity. It affords Seamus no rights against Tristar, a third party that did not sign the addendum or the charter and is not otherwise alleged in the complaint to be in privity with Seamus.

In addition, Seamus does not plead in the complaint that Tristar agreed to assume charterer's obligations to Seamus. Rather, Seamus alleges (in Complaint ¶ 5) that "[o]n September 25, 2007, an addendum to the charter party was agreed *between Seamus and Projector* whereby the charterer of the vessel *would be deemed to be Tristar* and *Projector would always be responsible for the fulfillment of the charter party*." Seamus and Projector could not, of course, simply agree between themselves to bind a third party, Tristar, to the charter. And Seamus's own interpretation of the addendum—recognizing that Tristar would only be

"deemed to be" the charterer, with Projector continuing to be responsible for performing the charter—suggests no such agreement on Tristar's part.

Not only has Seamus failed to plead facts sufficient to permit attachment of Tristar's property, but the facts preclude the attachment. As Mr. Mounzer explains, Tristar never agreed to become a charterer of the vessel alongside Projector and Tristar has no basis for claiming from Tristar the demurrage that Seamus has tellingly billed only to Projector and not to Tristar.

The voyage charter between Seamus and Projector concerns a cargo of gasoline blendstock that Tristar had purchased from Projector for resale in Nigeria. (Mounzer Decl. ¶¶ 3-4.) For commercial reasons Tristar did not want Projector to be perceived to be the source of the cargo that Tristar was delivering to its Nigerian buyer. (*Id.* ¶ 5.) Tristar therefore asked Projector to have Tristar's name shown in the charter, but without any undertaking on Tristar's part to assume Projector's obligations under the charterer or otherwise to become a charterer itself. (*Id.*)

The charter addendum adding Tristar's "style"—the result of communications between Projector's and Seamus's shipbrokers only, not between Tristar and Seamus—reflects Tristar's intent that it appear in the charter in name only, with Projector alone continuing to be the responsible charterer *vis-à-vis* Seamus. (*See*

Mounzer Decl. ¶¶ 6-8.)  And that is how Seamus itself understands the addendum.
(*See* Complaint ¶ 5.)

The addendum is reportedly grounded in an email message dated September
12, 2007 in which Projector told its shipbroker EA Gibson Shipbrokers Ltd.
("Gibson") that: "We need to assign this charter party to Tristar Petroleum SA.
Projector will remain responsible for all commercial aspects of the charter party.
Projector will make all payments and issue all instructions.  Please have owners
confirm."  (That message (provided by counsel for Seamus) is appended as McD.
Decl. Exh. C.)  It led to a further email message sent by Gibson on September 25,
2007, setting forth a proposed addendum similar to that added to the charter.
(That September 25th message (also provided by counsel for Seamus) is appended
as McD. Decl. Exh. D.)

As Mr. Mounzer has also explained, the reference to an assignment of the
charter was a miscommunication.  Projector never assigned the charter to Tristar
nor has Tristar otherwise ever assumed any of Projector's obligations under the
charter. (Mounzer Decl. ¶¶ 9-10.)  Neither Tristar nor Projector ever shared any
intent that Tristar would assume Projector's obligations under the charter and there
is no foundation for Seamus's assertion that Tristar, by virtue of the addendum, is
responsible for the demurrage that Seamus has billed only to Projector. (*Id.*; *see
also* Complaint Exh. 3.)  While Seamus claims to have "served on Defendants a

- 5 -

final demurrage invoice" (Complaint ¶ 14), the invoice appended to the complaint (Exh. 3) shows that Seamus has billed only Projector, without any mention of Tristar. Seamus's actions therefore refute any demurrage claim against Tristar.

The demurrage claimed by Seamus is also evidently part of a series of claims and counterclaims between Seamus and Projector arising out of the Scorpios charter. (*See* McD. Decl. Exh. E.) In particular, Projector, on June 24, 2008, reportedly sent Seamus Projector's invoice for the net balance that Seamus owes Projector under the charter ($278,896.32), expressly reserving Projector's right to sue Seamus for that balance in the High Court in London should Seamus not pay that invoice. (*Id.*) Moreover, in that June 24th message, Projector specifically asked Seamus to confirm that Seamus would discontinue the attachment action against Tristar. (*Id.*) That request confirms Projector's understanding that the addendum to the charter confers no right on Seamus to claim any moneys from Tristar in respect of the charter.

It follows that Seamus's attachment of the EFT en route to Tristar must be vacated, at Seamus's cost and expense.

ARGUMENT

**A.    Seamus Does Not Have a *Prima Facie* Maritime Claim Against Tristar.**

Under Supplemental Rule E(4)(f) Seamus is "required to show why the attachment should not be vacated or other relief granted consistent with these

- 6 -

rules." Most courts in this district apply a *prima facie* standard to determine

whether the plaintiff has a valid attachment right. *See, e.g., Transportes Navieros*

*y Terrestres, S.A. de C.V. v. Fairmount Heavy Transport N.V.*, No. 07 CV 3076,

2007 WL 1989309, at *3-4 (S.D.N.Y. July 6, 2007) (Preska, J.); *OGI Oceangate*

*Transportation Co. Ltd. v. RP Logistics Pvt. Ltd.*, 2006 U.S. Dist. LEXIS 46841

(S.D.N.Y. June 26, 2007) (Sweet, J.). To justify the attachment, Seamus must

therefore show that it has a *prima facie* breach-of-charter claim against Tristar.

*See, e.g., Sonito Shipping Co. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532,

536-537, 542-543 (S.D.N.Y. 2007) (holding that ship owner at the time it filed its

complaint did not have a valid indemnity claim against charterer). For three inde-

pendent reasons, Seamus cannot discharge that burden.

First, the charter addendum on which the complaint against Tristar is based

(Complaint ¶ 5 and McD. Decl. Exh. A)—which is not signed by or on behalf of

Tristar—does not establish any privity between Seamus and Tristar, a stranger to

the charter. Seamus had no right to attach Tristar's property based solely on the

unsigned addendum that on its face is not binding on Tristar and affords Seamus

no *prima facie* claim against Tristar. The unsigned addendum therefore does not

justify Seamus's attachment of the EFT en route to Tristar.

Second, Seamus does not, as noted, even allege that Tristar agreed to

become liable to Seamus as a charterer of the vessel. Rather, Seamus states (in

Complaint ¶ 5) that under the charter addendum agreed "between Seamus and Projector"—notably not agreed between Seamus and Tristar—"the charterer of the Vessel" would simply "be *deemed to be* Tristar," and "*Projector* would always be responsible for the performance of the charter party." Thus, Seamus's interpretation of the addendum—which is in fact consistent with the discussions between Tristar and Projector leading to the addendum (*see* Mounzer Decl. ¶¶ 3-10)— reflects Seamus's awareness that Tristar did *not* agree to undertake any charterer's obligations to Seamus, all of which continued to be Projector's responsibility. Seamus therefore—based on its own interpretation of the addendum pleaded in Complaint ¶ 5—has no *prima facie* claim against Tristar.

Third, the charter addendum is grounded in exchanges between Tristar and Projector that concerned Tristar's dealings with the Nigerian buyer of the oil, not Seamus. In the first place, it is not clear that Seamus can seek to present a *prima facie* claim based on evidence outside its complaint. *See Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2007 A.M.C. 252, 259, 271 (S.D.N.Y), 2006 U.S. Dist. LEXIS 95870, * 18, 42-46 (S.D.N.Y. July 6, 2007) (questioning a plaintiff's right to rely on evidence outside the verified complaint, but upholding the attachment based on evidence supporting a proposed amended complaint). Even if Seamus could do so, the evidence shows that Seamus cannot allege against Tristar a *prima facie* claim sufficient to permit attachment under Supplemental Rule B(1).

As Mr. Mounzer explains, Tristar never agreed to assume charterer's obligations *vis-à-vis* Seamus, it never authorized Projector to bind Tristar to the charter, and it was never the assignee of Projector's obligations under the charter. (*See* Mounzer Decl. ¶¶ 3-10.) Furthermore, the wording of the addendum, viewed in the light of Tristar's exchanges with Projector, reflects the fact that only Projector owed obligations to Seamus under the charter. (*Id.* ¶¶ 6-8.) As noted, that is the interpretation Seamus itself pleads in Complaint ¶ 5. That is, moreover, the understanding shared by Projector. (*See* McD. Decl. Exh. E.) And the fact that Seamus has billed only Projector for the alleged demurrage (*see* Complaint Exh. 3) reinforces Seamus's awareness that Tristar did not assume demurrage obligations under the charter.

Because Seamus—based on the unsigned charter addendum, its description of the addendum in the complaint, and the underlying facts—cannot discharge its burden under Supplemental Rule E(f)(4) to show it has a *prima facie* demurrage claim against Tristar, the attachment must forthwith be vacated.

**B.    Seamus Cannot Use Supplemental Rule B(1) To Secure High Court Claims in London.**

The attachment is also invalid because Seamus cannot use Supplemental Rule B(1) for security purposes in aid of a High Court litigation in London. The primary purpose of maritime attachment has always been to secure the defendant's

appearance in the action. The remedy cannot be exercised, as would be the case

here, solely to obtain security in aid of a foreign litigation.

The history of maritime attachment is explained in *D/S A/S Flint v. Sabre*

*Shipping Corp.*, 228 F. Supp. 384 (S.D.N.Y. 1964), *aff'd*, 341 F.2d 50 (2d Cir.

1965). "The history of the writ of foreign attachment reveals that it has always

been auxiliary to process in personam and designed to compel the appearance of a

party to a suit." *Flint*, 228 F. Supp. at 386 (quoting *Manro v. Almeida*, 23 U.S.

473, 493 (1825) ("On this subject it is very clear, that the primary object of the

attachment is to obtain an appearance."). *See also Swift & Co. Packers v. Compa-*

*nia Colombiana Del Caribe*, 339 U.S. 684, 693 (1950) ("The process of foreign

attachment is known of old in admiralty. It has two purposes: to secure a res-

pondent's appearance and to assure satisfaction in case the suit is successful.")

(citing *Manro*).

Based on that Supreme Court authority, the Court of Appeals for the Second

Circuit has long recognized that maritime attachment "has a dual purpose: (1) to

obtain jurisdiction of the respondent in personam through his property, and (2) to

assure satisfaction of any decree in libelant's favor." *Seawind Compania, S.A. v.*

*Crescent Line, Inc.*, 320 F.2d 580, 581-582 (2d Cir. 1963) (citing *Swift*). "The two

purposes may not be separated, however, *for security cannot be obtained except as*

*an adjunct to obtaining jurisdiction.*" *Id.* at 582 (emphasis added). *See also Chi-*

*lean Line Inc. v. United States*, 344 F.2d 757, 760 (2d. Cir. 1965) ("The writ, however, may not be utilized solely for the purpose of acquiring security; 'security cannot be obtained except as an adjunct to obtaining jurisdiction'") (quoting *Seawind*); *Cordoba Shipping Co., Ltd. v. Maro Shipping Ltd.*, 494 F. Supp. 183, 185 (S.D.N.Y 1980) ("It is clear, as defendants assert, that neither Fed.R.Civ.P. 4(e) nor Supp.R. B(1) authorizes the use of attachment solely as a device to secure a potential judgment. The procedure under these rules can furnish security, but only if it is incidental to an attempt to acquire *quasi in rem* jurisdiction") (citing *Chilean Line* and *Seawind*).

The Court of Appeals continues to recognize that two-fold purpose. *Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263, 267 (2d Cir. 2002) ("'The rationale underlying maritime attachment is twofold. First, attachment provides a means to assure satisfaction if a suit is successful'; the second purpose is 'to insure a defendant's appearance in an action, an aspect of attachment inextricably linked to a plaintiff's substantive right to recover.'") (quoting *Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 48 (2d Cir. 1996)) (citing *Manro*) (also explaining the history of Supplemental Rule B(1)); *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 444 (2d Cir. 2006) (recognizing a right of attachment "in aid of jurisdiction and to obtain security").

Seamus cannot use Supplemental Rule B(1) here because *quasi in rem* juris-diction over Tristar in this Court would be purposeless when Seamus's demurrage claim against Tristar (assuming there is one) would be adjudicated in an English court. Although Seamus says it brings the action "to obtain jurisdiction over the Defendants" and also "to obtain security [] in aid of the English High Court pro-ceedings" (Complaint ¶ 17), that contradictory assertion cannot be true. The attachment does not have any jurisdictional purpose in this Court. Tristar's ap-pearance in the action here would be irrelevant because Seamus is not asking this Court to exercise *quasi in rem* jurisdiction over Tristar to adjudicate Seamus's claim against Tristar. Seamus intends the English court, not this Court, to adju-dicate that claim. The purpose of Seamus's attachment is solely to obtain security in respect of a future action overseas, and hence is invalid. *See Seawind*, 320 F.2d at 581-582; *Chilean Line*, 344 F.2d at 760.[2] The Court of Appeals has not

---

[2]    Both *Seawind* and *Chilean Line* note that the essential issue in a motion to vacate an attachment is whether the defendant is found within the district because if the defendant is found within the district then the foreign attachment is not a proper means for obtaining jurisdiction over the defendant. *Chilean Line*, 344 F.2d at 760, 762. Similarly, attachment cannot be a proper means for obtaining *quasi in rem* jurisdiction over a defendant in cases when the district court—due to a foreign forum-selection clause—will not exercise that jurisdiction to adjudicate the plaintiff's claims. In such cases an attachment would have no effect other than to support a plaintiff's purported but in fact nonexistent right to secure claims *not* to be litigated in the district court. To allow attachment solely to secure claims in a foreign court would be to create an altogether new attachment remedy; contrary

sanctioned a maritime plaintiff's use of Supplemental Rule B(1) to secure claims asserted in a foreign court—thus making *quasi in rem* jurisdiction in the district court irrelevant—and the reasoning of its decisions precludes it.[3]

While courts in this district have upheld attachments to secure claims asserted in England in accordance with an English forum-selection clause, they have done so only on the grounds that the forum-selection clause does not preclude a Rule B(1) attachment. *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 311-313 (S.D.N.Y. 2007) (Scheindlin, J.), *appeal pending*, No. 07-0833 (2d Cir. argued May 15, 2008); *Sea Transport Contractors Ltd. v. Industries Chemiques de Senegal*, 411 F. Supp. 2d 386, 395-296 (S.D.N.Y. 2006 (Casey, J.). These decisions miss the mark. They wholly disregard the long line of Supreme Court and Second Circuit authority—from *Manro* to *Swift, Seawind, Chilean Line, Aurora,* and later Second Circuit cases—recognizing that attach-

---

to its long history, maritime attachment would no longer be "auxiliary to process in personam and designed to compel the appearance of a party to a suit" in the district court, *Flint*, 228 F. Supp. at 386 (citing *Manro*, 23 U.S. at 493-494), but would constitute instead a stand-alone security right.

[3]    In contrast, a plaintiff may attach property to secure claims subject to arbitration, but that is because the Federal Arbitration Act expressly permits it. 9 U.S.C. § 8. *See Marine Transit Corp. v. Dreyfus,* 284 U.S. 263, 275 (1932); *The Anaconda v. American Sugar Refining Co.,* 322 U.S. 42, 46 (1944); *Greenwich Marine Inc. v. S.S. Alexandria,* 339 F.2d 901, 903-904 (2d Cir. 1965).

ment must be used to acquire *quasi in rem* jurisdiction to permit the action to be adjudicated in the district court, *not* solely to obtain security.[4]

The dispositive question is not—as posed in *Consub Delaware* and *Sea Transport*—whether the wording of an English forum-selection clause precludes attachment under Supplemental Rule B(1). That puts the cart before the horse. The dispositive question is whether a plaintiff can use the maritime-attachment remedy to secure claims litigated in a foreign court—and the answer to that question given the historic two-fold purpose of maritime attachment must be no.

Both *Consub Delaware* and *Sea Transport* also rely erroneously on *Polar Shipping v. Oriental Shipping Corp.*, 680 F.2d 627, 633 (9th Cir. 1982), in which the Ninth Circuit panel sustained an attachment to secure claims in an English action governed by an English forum-selection clause. *Polar Shipping* is not the

---

[4]    In the pending *Consub Delaware* appeal (argued on May 15, 2008), the issue presented is "[w]hether the forum selection clause in the parties' contract precluded the Rule B attachment proceeding in the United States?" *See* Brief of Defendant-Appellant at 2, No. 07-0833 (2d Cir. July 26, 2007). As explained *infra*, however, that issue begs the fundamental point that a plaintiff cannot use Supplemental Rule B(1) solely for security purposes in aid of foreign litigation. That prohibition, not addressed in *Consub Delaware*, refutes Seamus's attachment. The *Consub Delaware* appeal also presents the issue arising in the wake of *Winter Storm* and *Aqua Stoli*, *i.e.*, "[w]hether an electronic fund transfer at an intermediary bank is the property of the originator subject to attachment under Rule B of the [Supplemental Rules]?" *Id.* at 1. As explained *infra* in Section C, the present case is distinguishable because Tristar was the beneficiary, not the originator, of the EFT.

governing law, and it also disregards the two-fold purpose of the maritime attach-

ment remedy recognized in *Manro, Swift, Seawind, Chilean Line, Aurora,* and

other cases.

Should the Court consider the validity of the attachment in the light of the

English proceedings foreshadowed by Seamus, then it should adhere to that

uniform line of Supreme Court and Second Circuit authority and vacate the

attachment that impermissibly seeks to secure a possible High Court judgment.

**C.    Tristar Did Not Have A Property Interest In The EFT.**

Although the Court also need not reach this issue, the attachment is invalid

for a third reason as well, *i.e.,* the EFT attached at Deutsche Bank, an intermediary

bank, was en route to Tristar, the beneficiary, at the Geneva, Switzerland branch of

ING Bank, the beneficiary's bank, *see* McD. Decl. Exh. B, and hence was not yet

Tristar's property.

In *Seamar Shipping Corp. v. Kramikovtzi Trade Ltd.*, 461 F. Supp. 2d 222,

225-226 (S.D.N.Y. 2006) (Rakoff, J.), the court held that a plaintiff cannot attach

an EFT en route to a *debtor-beneficiary* because the debtor-beneficiary does not

acquire an interest in the EFT until the beneficiary's bank accepts the payment

order. *See* N.Y.U.C.C. § 4-A-502 cmt. 4. The court distinguished and narrowly

construed *Winter Storm*, where the debtor was the *originator* of the EFT. *Seamar*,

461 F. Supp. 2d at 225. The court did so, moreover, in the light of *Aqua Stoli*,

- 15 -

which identifies the New York codification of the Uniform Commercial Code as the relevant state law "[i]n the absence of a federal rule governing whether an EFT is the property of an intended beneficiary while in transit." *Id.* at 226 (citing *Aqua Stoli*, 460 F.3d at 446 n.6) (relying on N.Y.U.C.C. § 4-A-502 cmt. 4). While Supplemental Rule B(1) affords a right of attachment, it does not determine *whose assets* EFTs are while in transit, an issue customarily governed by state law. *Aqua Stoli*, 460 F.3d at 446 n.6 (emphasis original).

Furthermore, in *Consub Delaware*, the case now before the Second Circuit, the debtor was the originator of the EFT, as in *Winter Storm*, leading the district court to apply *Winter Storm* as binding authority. *Consub Delaware*, 476 F. Supp. 2d at 311. Thus, the issue presented to the Court of Appeals in *Consub Delaware* is whether an EFT at an intermediary bank is the property of the debtor-originator, *see* n.5 above, unlike here, where the alleged debtor (Tristar) is the beneficiary of the EFT.

Should it reach the EFT-ownership issue, this Court should follow the reasoning of *Seamar Shipping*, 461 F. Supp. 2d at 225-226, distinguish *Winter Storm* on its facts, and vacate the attachment because Tristar, in accordance with

N.Y.U.C.C. § 4-A-502 cmt. 4, did not have a property interest in the EFT at

Deutsche Bank en route to Tristar's bank (ING) in Geneva.[5]

---

[5]     Whereas later decisions have questioned Judge Rakoff's ruling in *Seamar Shipping*, most do not directly address the issue of whether an EFT en route to a debtor-beneficiary, as opposed to one from a debtor-originator, may be attached under Supplemental Rule B(1). *See, e.g., Ronda Ship Mgmt. Inc. v. Doha Asian Games Organising Comm.*, 511 F. Supp. 2d 399, 405 (S.D.N.Y. 2007) (McMahon, J.) ("EFTs are the property of an originator while in transit and thus attachable.") (internal citations removed); *Dolco Invs., Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 270 (S.D.N.Y. 2007) (Sweet, J.) ("Here, [defendant] is the originator of the attached EFTs. There is no debate among the cases on this point: EFTs captured at the intermediary bank are attachable as assets of the originator.") (internal citations removed); *Navalamar (U.K.), Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.*, 485 F. Supp. 2d 399, 406 (S.D.N.Y. 2007) (Hellerstein, J.) ("In *Winter Storm*, as with [defendant] here, the defendant was the originator of the EFT, and it challenged the ability of a garnishing creditor to levy upon such funds."); *Mediterranea Di Navigazione SPA v. Int'l Petrochemical Group*, 2007 WL 1434985, at *2 (S.D.N.Y. May 15, 2007) (Koeltl, J.) ("Like this case, *Winter Storm* involved the attachment of EFT funds that originated from the defendant at its bank.").

And none of the decisions concerning debtor-beneficiaries questions Judge Rakoff's reasoning; those courts refusing to follow his lead have done so by rote reliance on the purportedly preclusive effect of *Winter Storm. See, e.g., AET Inc., Ltd. v. Procuradoria De Servicos Martimos Cardoso & Fonesca*, 464 F. Supp. 2d 241, 243 (S.D.N.Y. 2006) (Chin, J.) ("[T]hat the Second Circuit at some future time may reverse course and find that EFTs are not attachable is not helpful.... I will not stay the instant attachment pending some possible future Second Circuit decisions changing the law...."); *Ice Flake Maritime, Ltd. v. Westcoast AS*, 2007 WL 2979471, at *2 (S.D.N.Y. Oct. 11, 2007) (Castel, J.) ("One judge has observed that ... *Winter Storm* ... should be construed as limited to the factual circumstance .... I will remain with the majority of judges in this District in declining to depart from *Winter Storm*.") (internal citations removed).

**D.    Seamus Should Pay Interest On The Attached Funds.**

Finally, the Court should exercise its equitable power to order Seamus to

pay Tristar interest on the attached funds at the prevailing rate for 28-day U.S.

Treasury obligations from the date the funds were restrained (June 9th) until they

are released.  The invalid attachment has deprived Tristar of the use of those

funds, and Seamus as a matter of equity should make Tristar whole.

CONCLUSION

The attachment is invalid based on any one of the three grounds explained

above.  Tristar respectfully urges the Court to issue an order (a) vacating the

attachment of the funds ($220,020.29) at Deutsche Bank forthwith, and (b)

directing Seamus to pay Tristar interest on the attached funds at the prevailing rate

for 28-day U.S. Treasury obligations from the date the funds were restrained (June

9th) until they are released.

Dated:    June 30, 2008
          New York, New York

DLA PIPER US LLP

Stanley McDermott III
Peri A. Berger
1251 Avenue of the Americas
New York, New York  10020
(212) 335-4500
stanley.mcdermott@dlapiper.com

*Counsel for Defendant Tristar Petroleum S.A.*

- 18 -