UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                        :
SEAMUS HOLDINGS, S.A.,                                   :
                                                        :
                                   Plaintiff,            :        08 Civ. 05117 (SHS)
                                                        :
          - against -                                   :        ECF CASE
                                                        :
PROJECTOR S.A. and                                      :
TRISTAR PETROLEUM, S.A.,                                 :
                                                        :
                                   Defendants.           :
-----------------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO VACATE MARITIME ATTACHMENT


LENNON, MUPRHY & LENNON, LLC
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
(212) 490-6050
(212) 490-6070

*Attorneys for Plaintiff*
*Seamus Holdings, S.A.*

Patrick F. Lennon, Esq.
Anne C. LeVasseur, Esq.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT ................................................................................................................... 6

POINT ONE
SEAMUS HAS SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL
ADMIRALTY RULES B AND E(4)(f)............................................................................ 6

   A. SEAMUS HAS A VALID PRIMA FACIE MARITIME CLAIM AGAINST TRISTAR... 9

POINT TWO
RULE B MAY BE USED IN AID OF FOREIGN LITIGATION AS WELL AS
FOREIGN ARBITRATION ............................................................................................ 14

POINT THREE
TRISTAR HAS A PROPERTY INTEREST IN THE EFTS ............................................ 19

POINT FOUR
SEAMUS IS NOT REQUIRED TO PAY INTEREST ON THE ATTACHED FUNDS ............... 23

CONCLUSION............................................................................................................... 23

## INTRODUCTION

Plaintiff, SEAMUS HOLDINGS, S.A. ("Seamus" or "Plaintiff") by and through its undersigned counsel, Lennon, Murphy & Lennon, LLC, respectfully submits this Memorandum of Law in opposition to the motion to vacate maritime attachment filed by Defendant TRISTAR PETROLEUM S.A., ("Tristar"). Seamus also respectfully submits the accompanying declarations of Argyrios Mammas (Mammas Decl.), a director of Seamus, Anthanasios Theocharis ("Theocharis Decl."), shipbroker for Seamus, and John Hicks ("Hicks Decl."), of Waterson Hicks, Seamus' English Solicitor, in support of its opposition. Seamus' attachment against Tristar should not be vacated because this Court validly issued the attachment order pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure ("Rule B") and in accord with the United States Court of Appeals for the Second Circuit's decision in *Aqua Stoli Shipping Ltd. v. Gardner Smith*, 460 F.3d 434 (2d Cir. 2006). The attachment order was proper because: (1) Seamus has a valid *prima facie* admiralty claim against the Defendants arising out of a Charter Party contract dated August 2, 2007 and an addendum to the charter party dated September 25, 2007 for the carriage of petroleum products from Israel to West Africa; (2) Tristar cannot be found within the Southern District of New York or within any other federal judicial district; (3) Tristar has a property interest in the funds attached in the District; and (4) there is no statutory bar to the attachment. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). Accordingly, for the reasons set forth herein, Seamus has satisfied its burden under Supplemental Admiralty Rule E(4) to show cause why the attachment should not be vacated.

Tristar contends that Seamus does not have a prima facie admiralty claim against it because Tristar was a non-signatory to the charter party in question. Tristar bases its argument

on the fact that by adding itself to the charter party, its intent was to "appear in the charter in name only." *See Tristar Memorandum of Law at 4.* Tristar argues that "the addendum to the charter party confers no right on Seamus to claim any monies from Tristar in respect of the charter." *Id. at 6.* Tristar asks this Court ignore the clear and unambiguous test set forth above for resolving a motion to vacate, and instead to conduct an intensive factual inquiry into the intent of the parties, and the facts and merits of Seamus' underlying claim. However, the substantive determination of the extent of Tristar's liability under the Charter Party and Addendum is not properly before this Court. It is well settled law in the Second Circuit that in cases such as this, where the substantive dispute will be resolved in foreign litigation, the court is not to act as a trier of fact in a Rule E(4)(f) post-attachment hearing.

Ignoring this well-settled law, Tristar would nonetheless have this Court make determinations of law and fact. This is precisely the type of inquiry that the Second Circuit has indicated is beyond a district court's discretion under Rule E (4)(f). In *Aqua Stoli,* in the context of a Rule E(4)(f) attachment hearing, the Court held that it is inappropriate for the district court to engage in fact intensive inquiries into the substantive aspects and merits of the underlying claims. *Aqua Stoli Shipping Ltd.,* 460 F.3d at 447. In actuality, this action is ancillary to the English High Court proceedings that will determine whether Seamus is entitled to recover against Tristar on its claims.

Thus, in keeping with *Aqua Stoli,* it would be inappropriate for this Court to engage in a fact intensive inquiry regarding the merits of Seamus' underlying claim, as Tristar urges. This Court has jurisdiction over the attachment action, a pre-judgment remedy, and thus its inquiry is limited to only whether Seamus has met the requirements of Rule B. As will be more fully set forth herein, Seamus has met its burden to show cause why the attachment should not be vacated.

To the extent that Tristar's motion to vacate addresses the facts involved in the underlying dispute between the parties, Seamus respectfully submits that such issues are properly subject to English High Court proceedings. As such, this Court should decline to consider the substantive merits of the underlying dispute which are properly the subject of English High Court proceedings. *See World Reach Shipping Ltd. v. Industrial Carriers Inc.*, 2006 U.S. Dist. LEXIS 83224 at *7 (S.D.N.Y. November 9, 2006)(indicating that to the extent defendant challenged plaintiff's prima facie claim, the substantive merits were more properly the subject of the "underlying arbitration.") "Courts in a maritime attachment action are not permitted to make substantive determinations on the plaintiff's underlying claim, since Rule B specifies the sum total of what must be shown for a valid maritime attachment." *The Rice Co. v. Express Sea Transp. Corp.*, 2007 U.S. Dist. LEXIS 84300 at *6 (S.D.N.Y. November 15, 2007) *citing Aqua Stoli*, 460 F.3d at 447. "Determining the merits of these underlying issues would undermine the standard that 'a proper Verified Complaint is all that is required' to sustain an attachment". *The Rice Co. v. Express Sea Transp. Corp.*, 2007 U.S. Dist. LEXIS at *4.

For the foregoing reasons, and the reasons explained more fully below, the attachment should not be vacated.

## STATEMENT OF FACTS

Seamus is the head owner of the "M/T Scorpios" ("the Vessel"). By a charter party dated August 2, 2007, ("the Charter Party") Seamus voyage chartered the Vessel to Defendant Projector, S.A. ("Projector") for the carriage of petroleum products from Israel to West Africa. *Verified Complaint ¶ 5.* The terms of the Charter Party were negotiated between Projector's shipbroker, E.A. Gibson Ltd. ("Gibson"), and Seamus' shipbroker, IMS S.A. ("IMS"). *Theocharis Decl. ¶¶ 9-10.*

During the negotiations leading up to the Charter Party, and shortly thereafter, Gibson advised IMS that Projector, for their own cargo trading purposes, may need to assign the Charter Party to Tristar, an associated company of Projector. *Theocharis Decl. ¶ 11.* IMS discussed this matter with Seamus. *Theocharis Decl. ¶ 11.* Seamus did not know Tristar and was apprehensive to agree to assign the Charter Party without Projector also remaining on the Charter Party. *Theocharis Decl. ¶ 11.* IMS advised Gibson that it would not be possible to convince Seamus to accept the assignment of the charter unless Projector continued to be fully responsible for all payments under the Charter Party in addition to the new charterer. *Theocharis Decl. ¶ 11.* IMS further advised Gibson that Seamus had no obligation or interest in assigning the Charter Party, but, in an effort to preserve its commercial dealings with Projector, it may consider such assignment with a clear understanding that along with the charterer to be assigned under the Charter Party, Projector would also remain responsible for the performance of the Charter Party. *Theocharis Decl. ¶ 12.*

On September 13, 2008, Gibson sent an electronic correspondence to IMS formally requesting that the Charter Party be assigned to Tristar. *A copy of this email correspondence is attached to the Theocharis Decl. as Exhibit 1.* This email stated "we need to assign this charter party to Tristar Petroleum S.A. Projector will remain responsible for all commercial aspects of the Charter Party." *See Exhibit 1 to Theocharis Decl.* On September 25, 2007, Gibson followed up with another email which stated "[i]t is hereby mutually agreed to amend the charterer to 'Tristar Petroleum S.A., Projector always to be responsible for the fulfillment of the charterparty.'" *A copy of this email correspondence is attached to the Theocharis Decl. as Exhibit 2.*

4

Allegedly, Tristar wished to be added as a charter to the Charter Party for commercial reasons, as it did not want the buyer of the cargo to perceive Projector as the source of the cargo which Tristar delivering. *See Declaration of Salem Mounzer ¶ 5.* In addition, it is alleged that Tristar had discussions with Projector in which it requested that Projector add its name to the Charter Party. *See Declaration of Salem Mounzer ¶ 7.*

Pursuant to this alleged mutual agreement, on September 25, 2007, an addendum ("the Addendum") to the Charter Party was agreed upon which added Tristar as charterer under the Charter Party, with Projector remaining additionally responsible for the fulfillment of the Charter Party. *A copy of the Addendum is attached to the Theocharis Decl. as Exhibit 3.*

Disputes later arose under the Charter Party with respect to Projector and Tristar's (hereinafter collectively "Defendants") failure to pay outstanding sums for demurrage due and owing to Seamus in the amount of $149,378.13. *Id. ¶¶ 6-15.*

The Charter Party provided that any disputes arising out of or in connection with the Charter Party involving amounts in excess of $50,000 shall be subject to the jurisdiction of the English High Court in London. *See Clause 8, Law and Litigation Clause, of the Charter Party, attached as Exhibit 1 to Plaintiff's Verified Complaint.*

Seamus has retained the law firm of Waterson & Hicks, London, England to represent it in these proceedings. *Hicks Decl. ¶ 13.* Seamus has instructed Waterson Hicks to commence English High Court Proceedings against Projector and Tristar. *Hicks Decl. ¶ 14.* A Claim Form and Particulars of Claim will be issued shortly in which Seamus shall seek a declaratory ruling that Tristar is a party to the Charter Party and seeking judgment for the unpaid demurrage due and owing under the Charter Party. *Hicks Decl. ¶ 14*

On June 4, 2008, Seamus initiated this action and prayed for the issuance of an ex parte order of maritime attachment pursuant to Rule B against the Defendants to obtain jurisdiction and to obtain pre-judgment security for its claims in aid of the English High Court Proceedings. *Verified Complaint ¶ 18.*

The Verified Complaint prayed for issuance of Rule B attachment in the total amount of $220,020.29, inclusive of Seamus' principal claim, interest, and estimated recoverable legal fees and costs against the Defendants. *Verified Complaint ¶ 20, prayer for relief ¶ C.* It also prayed that this Court recognize and confirm any foreign judgment rendered on the claims had therein as a Judgment of this Court. *Verified Complaint prayer for relief ¶ B.* It further prayed that this Court enter judgment against the Defendants on the claims set forth therein. *Verified Complaint prayer for relief ¶ D.*

On June 5, 2008, this Court issued an Ex Parte Order of Maritime Attachment in the amount of $220,020.29. On June 9, 2008, pursuant to that Order, garnishee bank Deutsche Bank attached funds in the amount of $220,202.29 belonging to Tristar.

## ARGUMENT

### POINT ONE

### SEAMUS HAS SATISFIED ITS BURDEN OF PROOF
### UNDER SUPPLEMENTAL ADMIRALTY RULES B AND E(4)(f)

Seamus has carried its burden to show cause why the attachment should not be vacated. Under Rule B, an order of maritime attachment must issue upon a minimal *prima facie* showing provided that the defendant cannot be found within the district in which the assets are sought to be attached. Rule B provides, in relevant part:

> If a defendant is not found within the district..., a verified complaint may
> contain a prayer for process to attach the defendant's tangible or intangible
> personal property – up to the amount sued for – in the hands of garnishees
> named in the process. The plaintiff or the plaintiff's attorney must sign
> and file with the complaint an affidavit stating that, to the affiant's
> knowledge, or on information and belief, the defendant cannot be found
> within the district. The court must review the complaint and affidavit and,
> if the conditions of this Rule B appear to exist, enter an order so stating
> and authorizing process of attachment and garnishment. The clerk may
> issue supplemental process enforcing the court's order upon application
> without further court order.

Fed. R. Civ. P. Supp. Rule B(1). As summarized by the Court of Appeals for the Second Circuit:

> To begin the process, a plaintiff must file a verified complaint praying for
> an attachment and an affidavit stating that, to the best of the plaintiff's
> knowledge, the defendant cannot be found within the judicial district.
> [Fed.R.Civ.P. Supp. Rule B(1).] If the plaintiff's filings comply with
> these conditions, the court must enter an order authorizing the attachment,
> which the plaintiff may then serve on any persons in possession of the
> defendant's property located within the district. The order of attachment
> may be requested and granted ex parte, though notice of the attachment to
> the defendant via appropriate service is required. *Id.* Supp. Rules B(2),
> E(3).

*Aqua Stoli Shipping Ltd.*, 460 F.3d at 438. "The power to grant attachments in admiralty is an

inherent component of the admiralty jurisdiction given to the federal courts under Article III of

the Constitution," and its "historical purpose has been two-fold: first, to gain jurisdiction over an

absent defendant; and second, to assure satisfaction of a judgment." *Id. Accord Winter Storm*

*Shipping, Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002).

Furthermore, in respect of a defendant's right to challenge the validity of a maritime

attachment under Rule E(4)(f), the Second Circuit held in *Aqua Stoli* that a plaintiff need only

demonstrate that the attachment order was properly issued, *i.e.*: (1) that plaintiff has alleged a

valid *prima facie* maritime claim; (2) that the defendant cannot be found within the district; (3)

the defendant's property may be found in the district; and (4) that there is no statutory bar. Once

the plaintiff has made such a showing, a properly issued attachment order may be vacated only if

7

the defendant can prove any of four limited circumstances, none of which Tristar has alleged or

proven in this case.

While it is a plaintiff's burden to prove that it has complied with the technical requirements of

Supplemental Admiralty Rule B, it is the moving party's burden to prove one of the limited

equitable bases for vacatur. The Second Circuit held as follows in *Aqua Stoli*:

> We therefore hold that, in addition to having to meet the filing and service
> requirements of Rules B and E, an attachment should issue if the plaintiff
> shows that 1) it has a valid prima facie admiralty claim against the
> defendant; 2) the defendant cannot be found within the district; 3) the
> defendant's property may be found within the district; and 4) there is no
> statutory or maritime law bar to the attachment.  Conversely, a district
> court must vacate an attachment if the plaintiff fails to sustain his burden
> of showing that he has satisfied the requirements of Rules B and E.  We
> believe vacatur is appropriate in other limited circumstances.  While, as
> we have noted, the exact scope of a district court's vacatur power is not
> before us, we believe that a district court may vacate the attachment if the
> defendant shows at the Rule E hearing that 1) the defendant is subject to
> suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in
> personam jurisdiction over the defendant in the district where the plaintiff
> is located; or 3) the plaintiff has already obtained sufficient security for the
> potential judgment, by attachment or otherwise.

*Aqua Stoli Shipping Ltd.*, 460 F.3d at 445; *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006

U.S. Dist. LEXIS 95870 (S.D.N.Y. August 15, 2006).

The Second Circuit emphasized that "Rule B specifies the sum total of what must be

shown for a valid maritime attachment." *Aqua Stoli Shipping Ltd.*, 460 F.3d at 447.  Moreover,

the Second Circuit held that upon the plaintiff's showing that the attachment was properly

ordered, and that it complied with the requirements of Rules B and E, the "defendant bears the

burden of establish[ing] any equitable grounds for vacatur." *Id.* at 436.  As explained above, the

Rule(E)(4)(f) hearing is not intended to resolve the dispute between the parties, but merely to

determine if the technical requirements of the Rule were met.  Thus, as long as the plaintiff

establishes that it has alleged a *prima facie* maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment should be upheld absent any evidence that the plaintiff abused or improperly employed Rule B. *Id.* at 444. Once a plaintiff has established the technical requirements required by Rule B, the burden then shifts to the defendant to establish the three limited bases for vacatur. *Id.* Finally, *Aqua Stoli* held that it is improper for a district court to engage in a fact-intensive inquiry regarding the technical requirements of Rule B at a Rule E(4)(f) post-attachment hearing.

## A. **Seamus has a valid *prima facie* maritime claim against Tristar**

Tristar argues that Seamus does not have a valid *prima facie* breach of charter claim against Tristar for three independent reasons: (1) the Charter Party was unsigned; (2) Seamus did not allege that Tristar agreed to become liable to Seamus as a charterer of the vessel; and (3) the Charter Party Addendum is grounded in exchanges between Tristar and Projector that concerned Tristar's dealings with the Nigerian buyer of the oil, not Seamus. *Tristar's Memorandum of Law at 7-8.*

"Under the prima facie standard, a plaintiff need not present any evidence in support of his claim. Plaintiff's complaint must contain factual allegations that meet Supplemental Rule E(2)(a)'s heightened pleading standard by stating the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *Padre Shipping, Inc. v. Yong He Shipping a/k/a Yong He Shipping (HK) Limited,* 2008 U.S. Dist. LEXIS 34428 at *8-9 (S.D.N.Y. April 25, 2008).

9

In *Transportes Navieros Y Terrestes, S.A. de C.V. v. Fairmount Heavy Transport, N.A.*, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007), Judge Preska recently summarized that "[a]lthough the Court of Appeals has not stated exactly what a plaintiff must show to make out a '*prima facie* admiralty claim,' many district courts that have examined this issue since *Aqua Stoli* have adopted the 'limited inquiry contemplated by *Aqua Stoli*' and have adopted a basic definition of the term *prima facie*." *Id.* "The Court of Appeals in *Aqua Stoli* stated that 'our conclusion leads us to reject the reasoning of the more recent district court decisions that have engaged in a broader Rule E(4)(f) inquiry" including a district court vacatur inquiry that would impose a 'fact-intensive inquiry' into a Rule E(4)(f) vacatur hearing." *Id. (citing Aqua Stoli Shipping Ltd.,* 460 F.3d at 445). The Court in *Transportes Navieros Y Terrestes* confirmed that a plaintiff need not prove its case or present evidence. All that is required is a verified complaint alleging a *prima facie* valid maritime claim.

As applied to the facts of this case, it is clear that Seamus' allegations, including its allegation that Tristar was added as charterer of the Vessel via the Addendum (*Verified Complaint* ¶ 5)*,* and breached the terms of the Charter Party by refusing and/or failing to pay demurrage, (*Verified Complaint* ¶ 16) clearly set forth a valid *prima facie* maritime claim within the holdings of *Aqua Stoli, Transportes Navieros Y Terrestes, S.A.*, and *Tide Line.*

Tristar now asks this Court to look beyond the plain mandate of these holdings and engage in fact intensive semantics in an attempt to determine the parties' true intent in adding Tristar to the Charter Party. Whatever Tristar's intent or motive in adding its name to the Charter, the end result is the same, at Tristar's request it was added as a charterer to the Charter Party. Tristar admits this very fact. *See Declaration of Salem Mounzer ¶ 8-9; Declaration of*

10

*Projector S.A.* ¶¶ *3-4*[1]  Seamus reasonably relied on the fact that it had a binding Charter Party

with Tristar.  Seamus was firmly of the view that the Charter Party was assigned to Tristar and

that Projector would additionally continue to be responsible for performance of the Charter Party

and the charterers payment obligations.  *Mammas Decl.* ¶*13*.  Otherwise, Seamus had no reason

to agreeing to the Addendum, nor would there have been any consideration for its having done

so.

Tristar argues that the unsigned Addendum is a nullity and that it affords Seamus no

rights against Tristar.  *See Tristar's Memorandum of Law at 3.*  Tristar also argues that the

"assignment of the charter was a miscommunication".  *See Tristar's Memorandum of Law at 5;*

*Declaration of Salem Mounzer* ¶ *9.*  Whether this reference was a "miscommunication" or a

"mistake" (*See Declaration of Projector S.A.* ¶ *5)* these communications led Seamus to

reasonably believe it had a binding Charter Party contract with Tristar, with Projector also

remaining responsible for all commercial aspects of the Charter Party.  *Mammas Decl.* ¶ *13.*  In

any event, these factual disputes are of the very nature the Second Circuit ruled were

inappropriate for consideration at a post attachment hearing pursuant to Rule E(4)(f).

It is noteworthy that under English and federal maritime law, the Charter Party and

Addendum need not be signed by Tristar to be legally binding.  An agreement derived from an

exchange of correspondence is all that is required for a binding contract.  *Hicks Decl.* ¶¶ *6, 11;*

*See also Great Circle Lines, Ltd. v. Matheson & Co.,* 681 F.2d 121, 124 (2d Cir. 1982)("as a

maritime contract of charter is governed by maritime law and thus need not be in writing unless

expressly so required by an applicable statute.").  Tristar admits that it was in fact the party

---

[1] Seamus notes that pursuant to this Court's scheduling order, Tristar's papers in support of its Motion to Vacate Maritime Attachment were due to be filed and served on or before June 30,2008.   Tristar filed the Declaration of Michael Kennefick of Projector S.A. two days later, on July 2, 2008. Therefore, this filing was untimely and in violation of this Court's scheduling order.

delivering the cargo pursuant to the Charter Party, and that it requested that its name be shown on the Charter Party. *See Declaration of Salem Mounzer ¶ 5, Tristar's Memorandum of Law at 4.* Thus, Tristar has admitted that it enjoyed rights under the Charter Party and acted as if it was in fact the charterer. Tristar argues that the reference to the assignment of the Charter Party was a "miscommunication" and that "neither Tristar nor Projector ever shared any intent that Tristar would assume Projector's obligations under the charter." *See Tristar's Memorandum of Law at 5.* Tristar's intent is not relevant at a Rule E(4)(f) hearing. "Whether there was a meeting of the minds resulting in a charter party is a question of fact." *Great Circle Lines, Ltd. v. Matheson & Co.,* 681 F.2d 121, 125 (2d Cir. 1982). As discussed *supra,* it is inappropriate for this Court to engage in fact intensive inquiries into the substantive aspects and merits of the underlying claims. *See Aqua Stoli Shipping Ltd.,* 460 F.3d at 445. Rather, Seamus need only *allege* a legally sufficient claim, which it has clearly done. Ultimately, the facts that Tristar has admitted are in and of themselves fatal to its motion to vacate the attachment.

Moreover, Seamus disputes that the word "assignment" was a "misrepresentation" or "miscommunication". In the course of negotiations of the Addendum, Projector was not merely suggesting that it needed to sublet or sub-charter the Vessel, which it could do under the sub-let clause contained in the Charterer Party without the need for the Addendum. *See Clause 25, Sublet Clause of Charter Party, attached as Exhibit 1 to Verified Complaint; Theocharis Decl. ¶ 13.* Projector was specifically seeking to assign the Charter Party. *Theocharis Decl. ¶ 13.* IMS specifically advised Gibson that Seamus would agree to the assignment of the Charter Party so long as in addition to the contractual obligations being assumed by Tristar, Projector would also continue to be responsible for the performance of the Charter Party including all payment

obligations. *Theocharis Decl. ¶20.* Gibson agreed to this assignment on behalf of its clients, Projector and Tristar. *Theocharis Decl. ¶ 20.*

Seamus agreed to a full assignment of the Charter Party without any limitations and without any parts of the Charter Party being excluded from the Assignment, and in addition with Projector continuing to be responsible for the full performance of the Charter Party, which included charterers' payment obligations. *Theocharis Decl. ¶ 23; Mammas Decl.¶ 13.*

Tristar further argues that the fact that Seamus sent an invoice for the outstanding demurrage to Projector refutes any demurrage claim Seamus may have against Tristar. *See Tristar's Memorandum of Law at 5-6.* As explained by Mr. Mammas, despite the assignment of the Charter Party to Tristar, Seamus continued to send invoices to Projector as it had been advised that Projector and Tristar were associated companies. *Mammas Decl. ¶ 5.* Because Projector was a company known to it, and since it had ensured that despite assignment of the Charter Party to Tristar, it would remain responsible for payment obligations under the Charter Party, Seamus continued to send invoices to Projector. *Mammas Decl. ¶ 5.* Accordingly, these actions do not refute any demurrage claims Seamus has against Tristar.

Tristar has alleged a *prima facie* maritime claim against Tristar for breach of the Charter Party. Tristar does not dispute that Seamus' breach of Charter Party claim sounds in admiralty. "[A] maritime contract is one that 'related to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment." *Stolt-Nielsen SA v. Celanese AG*, 430 F. 3d 567, 572 (2d Cir. 2005).

Thus, for the foregoing reasons, Seamus has alleged a valid *prima facie* maritime claim against Tristar arising from the breach of the Charter Party.

Finally, Tristar does not allege that it is subject to suit in an adjacent jurisdiction or another convenient jurisdiction, nor does it allege that Plaintiff could obtain *in personam* jurisdiction over it in the district where Plaintiff is located, nor has not shown that Seamus has otherwise obtained sufficient security. Additionally, as will be discussed in Point Three, *infra*, under Second Circuit law, the funds under attachment constitute property in which Tristar has an attachment interest. Based on the foregoing, Tristar's motion to vacate must be denied as it fails to advance any legitimate basis upon which Seamus' Rule B attachment may be vacated pursuant to Rule E(4)(f).

### POINT TWO

### RULE B MAY BE USED IN AID OF FOREIGN LITIGATION AS WELL AS FOREIGN ARBITRATION

Tristar argues that Seamus' attachment should be vacated because Seamus cannot use Rule B for security purposes in aid of High Court litigation in London. Tristar thus contends that because Seamus will adjudicate its underlying claims before the English High Court, and not this Court, the purpose of Seamus' attachment is solely to obtain security in respect of future claims. *Tristar's Memorandum of Law at 12.*

Rule B has a two-fold purpose, to wit: to insure a defendant's appearance in an action and to provide a means to assure satisfaction if a suit is successful. *See Winter Storm v. TPI*, 310 F.3d 263 at 267. As Seamus alleged in its Verified Complaint, these two purposes were the reason Seamus filed this action. This is evident from the face of the Verified Complaint ("[t]his action is brought in order to obtain jurisdiction over Defendants and also to obtain security for Plaintiff's claims and in aid of English High Court proceedings." *Verified Complaint ¶ 18.*). Tristar now argues that because Seamus' demurrage claim will be adjudicated in an English

14

Court, jurisdiction over Tristar in this Court would be purposeless. *Tristar's Memorandum of Law at 12.* Tristar's argument ignores well-established law on this issue.

Courts in the Southern District of New York have addressed the issue of whether or not Rule B may be used by a plaintiff whose sole purpose is to obtain security for claims being litigated in a foreign jurisdiction. *See Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 F. Supp. 189, 1987 U.S. Dist. LEXIS 3491 (S.D.N.Y. May 4, 1987). *Staronset* involved a motion to vacate plaintiff's maritime attachment in connection with a dispute over liability for a stevedore's fees for removing cargo from a ship while being operated by the charterer. *Id.* The action was being litigated in another jurisdiction, and the ship owner's sole purpose in seeking the Rule B attachment was to attach charterer's assets pursuant to Rule B(1) to obtain security. *Id.* The defendant argued that "the primary purpose of Rule B is to obtain jurisdiction over a defendant, and that security may be obtained as an adjunct of jurisdiction, but that Rule B is inapplicable, where, as here, the sole purpose of the attachment is security." *Id.* at 190. The court disagreed with the defendant, holding that plaintiff's attachment "falls undeniably within the plain meaning language of the Rule, as the charterer is not to be found in the district, despite whether plaintiff's primary motive was to obtain security." *Id.*

Tristar relies on *Chilean Line Inc. v. U.S.A.*, 344 F.2d 757, 760 (2d Cir. 1965), *Seawind Compania, S.A. v. Crescent Line*, 320 F.2d 580, 582 (2d Cir. 1963), *D/A A/S Flint v. Sabre Shipping Corp.*, 228 F. Supp. 384 (S.D.N.Y. April 16, 1964), *aff'd* 341 F.2d 50 (2d Cir. 1965) and *Cordoba Shipping Co., Ltd. v. Maro Shipping Ltd.*, 494 F. Supp. 183,185-186 (D. Conn. July 16, 1980), in support of its claim that Rule B attachment cannot be used solely to obtain security. Seamus notes again that it did not bring this action solely to obtain security. Nevertheless, these cases are all easily distinguishable from the instant case because the plaintiffs in these cases were

15

all in fact utilizing Rule B attachment solely for the purpose of acquiring security, as all the

defendants were "found" within the district. *See Seawind Compania S.A.*, 320 F.2d 580,

(affirming district court's vacatur of foreign attachment on the grounds that defendant was

'found' within the Southern District of New York and amenable to service of process) *D/A A/S

Flint v. Sabre Shipping Corp.*, 228 F. Supp. 384 (affirming district court's vacatur of foreign

attachment on the grounds that defendant was present within the district and likely amenable to

service there); *Cordoba Shipping Co., Ltd. v. Maro Shipping Ltd.,* 494 F. Supp. 183 (holding that

the Court had in personam jurisdiction over defendants since principal place of business was in

Connecticut and were Connecticut corporations; therefore, attachment to acquire jurisdiction

was unnecessary.)

> In *Chilean Line Inc. v. U.S.A.*, the Second Circuit held:

> Where respondent cannot be found within the district in which the suit is
> instituted, the writ of foreign attachment serves two purposes – in addition
> to providing the necessary in personam jurisdiction over the respondent
> through attachment of his property, it also servers to assure satisfaction of
> any decree in libelant's favor. *See Seawind Compania v. Crescent Line,
> Inc.,* 320 F.2d 580, 581-582 (2d Cir. 1963). The writ, however, may not
> be utilized solely for purposes of acquiring security, 'security cannot be
> obtained except as an adjunct to obtaining jurisdiction'. Thus, in passing
> on a motion to direct the issue of such proves or to vacate a foreign
> attachment, the crucial issue is whether respondent could have been found
> in the district in which the action was commenced.

*Chilean Line*, 344 F.2d *at* 760. Thus, *Chilean Line Inc.* held that the defendant, a New York

corporation, was amenable to service in the Southern District of New York and that since it

could be "found" within the Southern District both in terms of doing business and service of

process, and, a writ of attachment could not be used to obtain in personam jurisdiction over it.

*Id.* at 762. It followed that the plaintiff could not properly use Rule B attachment solely for the

purpose of obtaining security because the literal requirements of Rule B had not been met, unlike in this case.

Tristar does not contend that it can be found within this District, and in fact it cannot. Based on the Affidavit submitted by Seamus' counsel at the time it sought issuance of the Rule B attachment and the lack of any contrary argument by Tristar, it is clear that Tristar is not present within the Southern District of New York. Therefore, Seamus' Rule B attachment meets the requirements of Rule B and its two purposes are met. Moreover, Judge Knapp held in *Staronset Shipping* that neither *Chilean Line Inc., Seawind Compania or D/A A/S Flint* "suggest that Rule B requires that jurisdiction be the applicant's prime motive." *Staronset Shipping,* 659 F. Supp. 189 at 190. In fact, a plaintiff's motive in filing a Rule B attachment is irrelevant. *See Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa, S.A.*, 56 F.3d 359, 371, 1995 U.S. App. LEXIS 11659 (2d Cir. 1995) *citing Seawind Compania S.A. v. Crescent Line,* 320 F. 2d at 582 ([a] marine attachment is precluded under Admiralty Rule B(1) only if the defendants have engaged in sufficient activity in the district or the cause of action has sufficient contacts with the district to permit the court to exercise in personam jurisdiction over the defendants . . . and in addition [the defendants] can be found within the geographical confines of the district for service of process.); *see also HBC Hamburg Bulk Carriers GmbH & Co. v. Proteinas Y Oleicos S.A. DE C.V.*, 2005 U.S. Dist. LEXIS 8009; 2005 AMC 1586 at *15-16 (S.D.N.Y. May 4, 2005) (holding "while security cannot be obtained except as an adjunct to obtaining personal jurisdiction, it is permissible for a party to seek attachment with the primary goal of attaining security").

Tristar also argues that "the attachment does not have any jurisdictional purpose in this Court" as the claims will be adjudicated in an English High Court. *Tristar's Memorandum of Law at 12.* However, a forum selection clause calling for litigation in London does not oust this

17

Court of jurisdiction. "Because the scope and enforcement of a forum selection clause is a

matter of contract, the intent of the parties governs the extent to which the non-selected court

may exercise jurisdiction." *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 1982

U.S. App. LEXIS 17824 (1982).

> Under English law, as under United States law, the enforceability of a
> foreign court selection clause is a matter of judicial discretion. *See The
> Eleftheria,* (1969) 1 Lloyds List L.Rep. 237 (Q.B.1969), cited in *The
> Bremen,* 407 U.S. at 11 n.12, 92 S. Ct. at 1913 n.12, *Unterweser Reederei
> G. m. b. v. Zapata Off-Shore Co. (The Chaparral),* (1968) 2 Lloyds List
> L.Rep. 158 (CA) (the English court proceedings in The Bremen case). The
> English rule provides that the enforcing court may take steps to ensure the
> plaintiff of adequate security to prevent prejudice that might otherwise
> result from the enforcement of a forum selection clause. *See, e.g., The
> Eleftheria, at 246; The Makefjell* (1975) 1 Lloyds List L.Rep. 528
> (Q.B.1975), aff'd (1976) 2 Lloyds List L.Rep. 29 (Ct. of App.1976). Thus,
> under the law chosen by the parties here to govern the construction of their
> charter, it appears that the foreign court selection provision of clause 22
> does not preclude Polar from obtaining prejudgment security by maritime
> attachment in the district court or preclude the district court from ensuring
> the availability of adequate security in the selected court before dismissing
> the action.

*Id.* at 623-633. *Polar Shipping* held "in an admiralty action, absent express intent to the

contrary, a forum selection clause providing that all disputes under the charter will be determined

by a selected foreign court neither precludes a plaintiff from commencing an action in the district

court to obtain security by maritime attachment, nor prohibits the district court from ensuring the

availability of security adequate to satisfy a favorable judgment by the selected forum." *Id.* at

633.

Moreover, the late Judge Casey addressed a similar argument in *Sea Transport*

*Contractors, Ltd. v. Industries Chemiques Du Senegal*, 411 F. Supp. 2d 386, 2006 U.S. Dist.

LEXIS 2602 (S.D.N.Y. 2006). In that case, the defendant argued that plaintiff's Rule B

attachment should be vacated because, *inter alia,* the attachment could not be used in aid of

foreign litigation in London. *Id.* Defendant further argued that "were the Courts to allow attachments in aid of foreign litigation, thousands of lawsuits would be filed here, even though they have no underlying connection with New York or the U.S. in general, premised merely on the desire for security and the hope that monies of the defendant might be moving through the banking system". *Id.* at 395. Agreeing with the Ninth Circuit's rationale in *Polar Shipping*, Judge Casey held that "a forum selection clause providing for a foreign forum does not preclude a Rule B attachment in the United States." *Id.* at 395. "The Second Circuit has stated then what is true now, namely that 'maritime attachment is available whenever the plaintiff has an *in personam* claim against the defendant which is cognizable in admiralty. There is no nationality – based jurisdictional limitation in this Court's admiralty purview and, inasmuch, Rule B seizures of EFTs have since 2002 been available to 'every foreign litigant' with a claim or currently in foreign arbitration". *Id. (citing Winter Storm v. TPI*, 310 F.3d at 268).

For the foregoing reasons, Tristar's argument fly in the face of well established authority within the Second Circuit. Regardless of whether Seamus' prime intention was to obtain security, it did not utilize Rule B improperly and thus Tristar's motion to vacate on this basis must be denied.

**POINT THREE**

**TRISTAR HAS A PROPERTY INTEREST IN THE EFTS**

Tristar claims that the EFTs in question were not yet its property because they were attached at an intermediary bank, Deutsche Bank, en route to Tristar, the beneficiary, in Switzerland. *Tristar's Memorandum of Law at 15.* Therefore, Tristar argues, as a beneficiary of the EFTs, it did not have a property interest in the funds while they were en route to its bank. This argument is foreclosed by Second Circuit law.

19

"It is clear that under the law of this circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction." *See General Tankers Pte., Ltd. v. Kundan Rice Mills, Ltd.,* 475 F.Supp.2d 396, 398 (S.D.N.Y. February 21, 2007) (*citing Aqua Stoli,* 460 F.3d at 436, ((*citing Winter Storm Shipping,* 310 F.3d 263.)) "Between *Winter Storm* and *Aqua Stoli,* courts in this Circuit quickly accepted that beneficiaries as well as the originators of EFTs have a property interest in those funds while in transit." *General Tankers,* 475 F. 3d at 398.

Tristar relies on Judge Rakoff's decision in *Seamar Shipping Corp. v. Kremikovtzi Trade,* 461 F. Supp. 2d 222 (S.D.N.Y. 2006) which held that a plaintiff cannot attach an EFT en route to a debtor-beneficiary because the debtor-beneficiary does not acquire an interest in the EFT until the beneficiary's bank accepts the payment order. *Tristar's Memorandum of Law at 15.* Following this reasoning would disregard the plain meaning of the Second Circuit's holding in *Aqua Stoli,* in favor of a single non-binding decision from one district court judge, which has not been followed by any other judge within this District. As noted by Judge Marrero, *Seamar* is "alone in its interpretation of *Aqua Stoli* as impliedly restricting *Winter Storm* attachments only to originators." *General Tankers Ptd.,* 475 F. Supp. 2d at 399. Other district courts deciding this issue since *Aqua Stoli* have refused to follow *Seamar.* Instead, the Second Circuit's decisions in *Winter Storm* and *Aqua Stoli* remain binding precedent. *Id.; see also Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin Co.*, 2007 U.S. Dist. LEXIS 24737 (S.D.N.Y. April 4, 2007) *citing e.g. Maersk, Inc. v. Neewra, Inc.*, 2006 U.S. Dist. LEXIS 73096, at *2 (S.D.N.Y. October 6, 2006)("that the court of appeals made mention, in a footnote, of a reason why *Winter Storm* might have been incorrectly decided is of no moment. Indeed, *Aqua Stoli* can only be read to reaffirm *Winter Storm* as the law of this Circuit.)

Judge Buchwald considered this issue in *HBC Hamburg Bulk Carriers GmbH v.*

*Proteinas Y Oleicos S.A. DE C.V.,* 2005 U.S. Dist. LEXIS 8009 (S.D.N.Y. 2005):

> The issue is whether, for purposes of Rule B attachment, an EFT remains
> the exclusive property of the sending-payor until it enters one of the banks
> associated with the recipient-beneficiary. We hold that it does not. Rule
> B permits a plaintiff 'to attach intangible items, such as debts owed to the
> defendant. Such items may be attached even if they have not yet matured
> or have only partially matured.' *Winter Storm v. TPI,* 301 F.3d 263, 276
> (2d Cir. 2002). The only limitation on such attachment is that 'the
> defendant's entitlement to the credit or interest in the debt must be clear."
> *Id.*

*HBC Hamburg,* 2005 U.S. Dist. LEXIS 8009 at *10. Judge Buchwald held that because the

Defendant "had a clear property interest in the debt owed to it, and because the EFT in the hands

of the intermediary bank is intended to satisfy that debt, [defendant] had a property interest in the

EFT before it is technically possessed by the bank." *Id.* at *10-11.

Judge Buchwald also relied on and adopted Judge Cote's holding in *Noble Shipping, Inc.*

*v. Euro-Maritime Chartering, Ltd.,* 2003 U.S. Dist. LEXIS 23008, (S.D.N.Y. 2003). *Noble*

*Shipping* involved defendant's challenge to the attachment of an EFT sent by a third-party

customer as payment to the defendant as a beneficiary. Plaintiff attached the payment while the

funds were at an intermediary bank. The defendant argued that the EFT "remained the property

of the [sending payor] because the funds [had] never reached [defendant's] account." *Id.* at *2.

Judge Cote held "neither the location of the debt at the time of its attachment, nor the fact that

this case arises under maritime contract law, changes the basic principle that debts are property

subject to attachment. The fact that the beneficiary-defendant had not yet received the funds in

its bank account did not diminish its property interest in the EFT, and thus did not invalidate the

attachment." *Id.* at *3.

Judge Buchwald also clarified *Winter Storm,* explaining "*Winter Storm* does not require us to find that the intended recipient of an EFT has no property interest in that EFT. *Winter Storm* did not focus on the issue of ownership of an EFT in the hands of an intermediary bank; instead the decision centered on whether an EFT is sizeable *res* for attachment purposes." *HBC Hamburg Bulk Carriers GmbH*, 2005 U.S. Dist. LEXIS 8009 at *13, *Winter Storm,* 310 F.3d at 35. "Moreover, in reaching its decision the *Winter Storm* court 'itself relied on a case in which the defendants who sought unsuccessfully to vacate attachment were the intended beneficiaries of the EFT.'" *Id. citing Noble Shipping*, 2003 U.S. Dist. LEXIS 23008 at *3 (citing *Winter Storm's* reliance on *United States v. Daccarett*, 6. F.3d 37, 54 (2d Cir. 1993)((approving attachment at intermediary bank of EFTs being sent to defendant beneficiaries.)).

"While the attachment of EFTs in the hands of an intermediary as property of either the sending-payor and the recipient-beneficiary might appear peculiar, it is the logical result of the broad terms of Rule B's attachment language coupled with the overlapping property rights of sending-payors and recipient-beneficiaries in EFTs." *HBC Hamburg Bulk Carriers GmbH*, 2005 U.S. Dist. LEXIS 8009 at *13-14; *See also Winter Storm,* 310 F.3d at 276. "Rule B is intended to impact any property in which the defendant has a legal interest. Nothing in the language of Rule B requires that the property attached be the exclusive property of the defendant, nor that we adjudicate the competing property interests of the sending-payor and the recipient-beneficiary in an EFT at an intermediary bank." *Id.* at *14.

As binding Second Circuit authority holds that EFTs originating from and being paid to the named defendant are subject to attachment, Tristar's funds were validly attached. Tristar's argument therefore should be rejected and the Court should sustain Seamus' attachment of the EFTs in question.

22

## POINT FOUR

## SEAMUS IS NOT REQUIRED TO PAY INTEREST ON THE ATTACHED FUNDS

Tristar has offered no case law in support of its request that this Court exercise its equitable power and order Seamus to pay Tristar interest on the attached funds at the prevailing rate for 28-day U.S. Treasury obligations from June 9, 2008 (the date funds were restrained) until they are released.

Because this Court validly issued the attachment order, and because Seamus has met its burden to show cause why the attachment should not be vacated, Seamus should not be made to pay Tristar interest on the attached funds.  In any event, the funds can be placed in an interest bearing account or the court's interest bearing registry account so they will generate interest until they matter is resolved.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons Seamus respectfully requests that this Court deny Tristar's Motion to Vacate Maritime Attachment.

Dated: July 9, 2008
New York, NY

LENNON, MURPHY & LENNON, LLC
*Attorneys for Plaintiff*
*Seamus Holdings, S.A.*

By: _Anne C. LeVasseur_
Patrick F. Lennon (PF 2162)
Anne C. LeVasseur (AL 3333)
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – facsimile
pfl@lenmur.com
acl@lenmur.com

23

## AFFIRMATION OF SERVICE

I hereby certify that on July 9, 2008 a copy of the foregoing MEMORANDUM OF LAW

IN OPPOSITION TO MOTION TO VACATE MARITIME ATTACHMENT was filed

electronically and served by mail on anyone unable to accept electronic filing.  Notice of this

filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or

by mail to anyone unable to accept electronic filing.  Parties may access this filing through the

Court's CM/ECF system.


By:_____
         Anne C. LeVasseur