UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
SEAMUS HOLDINGS, S.A.,           :     08 CIV 5117 (SHS)
                                 :
            Plaintiff,           :     ECF CASE
                                 :
      - against -                :
                                 :
PROJECTOR S.A. and TRISTAR       :
PETROLEUM S.A.                   :
            Defendants.          :
------------------------------------------------X

## DECLARATION OF ARGYRIOS MAMMAS

ARGYRIOS MAMMAS declares under penalty of perjury of the laws of the United States of America as follows:

1. I am a Greek national, of 54 years of age, and I am one of the directors of Seamus Holdings S.A..

2. I have been asked to submit this Declaration by Lennon, Murphy and Lennon, the attorneys representing the Plaintiff Owner Seamus Holdings S.A. in this action.

3. I have had the task of overseeing the performance of the charterparty dated 2nd August 2007 between Seamus Holdings S.A.,. and Projector S.A. and the addendum No. 1 dated September 25, 2007, adding Tristar Petroleum S.A. as charterer, in respect of the M/T Scorpios. Hence, I have personal knowledge of the facts and circumstances of the voyage and of the disputes which have arisen between Seamus Holdings S.A., Tristar Petroleum S.A. and Projector S.A..

4. On the 19th October 2007, the Motor Tanker Scorpios completed all its voyage obligations to the Charterers and proceeded to sail from Lagos. On the 23rd October 2007, Seamus Holdings S.A. prepared its invoice and relevant documentation in respect of the demurrage outstanding to that date, namely the amount of USD149,378.13. The documentation was passed on to the brokers, IMS S.A., for onward transmission to the Charterers via their brokers Gibsons.

5. Up and until that time, the freight and the on account demurrage payments had been paid by Projector S.A. Despite the assignment of the Charter to Tristar Petroleum S.A., no instructions had been received from Gibsons so as to change any aspect of the communications to the Charterers. This did not raise any alarm with us since we had been advised that Projector S.A. and Tristar Petroleum S.A. were associated companies anyway. Hence, since Projector S.A. were known to us and since we had ensured that despite the assignment of the charterparty to Tristar, nevertheless, Projector S.A. would also be responsible for the payment obligations under the charterparty, we continued to send the invoices to Projector S.A..

6. However, rather surprisingly, despite numerous reminders being sent to the Charterers via the broking channels, we noted from the correspondence that was being passed on to us that we were not receiving payment of the outstanding demurrage and other minor miscellaneous items and more worryingly we were not even receiving any response or comment from the Charterers in respect of the outstanding amounts.

7. Hence, in April we contacted the Managers of the vessel, Delfi S.A. and a company of legal consultants that were known to us, Worldwide Shipping Services Ltd, and asked them to assist us in recovering the outstanding amount. Since the Charterers continued not to respond to the demands for payment, in late May 2007 we authorized the commencement of litigation proceedings plus such further action as was necessary so as to obtain security for our claim and also to attract the attention of the Charterers who were blatantly ignoring us.

8. The charterparty jurisdiction for adjudicating disputes in excess of USD$50,000.00 was the High Court of England and Wales. Within a short time, Waterson Hicks, London Solicitors, had been instructed to commence High Court proceedings. The relevant documentation has already been provided to them and we anticipate that proceedings will be issued by them shortly against Tristar Petroleum S.A. and Projector S.A.. In the meantime it is noted that the Charterers have been asked repeatedly to provide an address for service of the London proceedings but they have simply ignored our requests without providing any response whatsoever.

9. At the same time that Waterson Hicks were being engaged, Lennon, Murphy and Lennon were also instructed in New York on behalf of the Owners so as to "attract the Charterers attention!" I had read the Verified Complaint dated 4th June 2008 prior to its submission to the Court and other related documentation and Seamus Holdings S.A. had granted its approval for same to be lodged with the Court in New York. I can confirm that the contents of the said verified complaint are accurate and correct.

10. Instructions were given to Lennon, Murphy and Lennon to seek to attach assets of Tristar Petroleum S.A. and Projector S.A., bearing in mind that the Charter had been assigned to Tristar and hence they also had responsibility for the payment of the demurrage and other items to the owners along with Projector S.A. who continued to be responsible for the Charterers performance and payment obligations under the charterparty, as we had specifically negotiated and agreed.

11. A short while after the proceedings in New York were filed, I believe on about the 10th June 2008, we managed to arrest funds of Tristar. Then, within two days, on the 12th June 2008, we received via the broking Channels the first response ever to our demurrage invoice dated 23rd October 2007. The Charterers admitted that at least USD124,623.95 was due to Seamus as outstanding demurrage but they alleged that they had a counterclaim for USD92,212.79 as a return on freight paid and USD311,307.48 for alleged loss of profit. The claim for the return of freight was a matter that had already been dealt with by the Owners at the time that the vessel loaded its cargo at Israel in August /September 2007 and it was a matter that was finally concluded when the Charterers indeed paid the full freight in October 2007, after the completion of discharge of the cargo from the vessel. As to the alleged counterclaim of USD311,307.48, no documentation in support was provided whatsoever and the basis of the claim itself does not stand up to legal scrutiny. In my view, these alleged counterclaims were concocted by the Charterers so as to have something to show as a counter to the Owners' valid claims. For the sake of good order, a response was provided by the Owners to the Charterers in respect of these alleged complaints on the 28th June 2008.

12.   Now, I understand that Tristar S.A. are challenging before the Court in the United States the assignment of the charterparty to them and the extent of their obligation to pay Seamus Holdings S.A.. In my humble view, this is a matter that should be finally determined by the High Court of England and Wales and that nothing should be done before hand that might prejudice a final decision there.

13.   Be that as it may, I can confirm that I have read the statement of Mr Athanasios Theocharis dated 9th July 2008 and I confirm that its contents are accurate and true. Seamus Holdings S.A. is firmly of the view that the Charterparty was properly assigned to Tristar Petroleum S.A. and that the original charterers, Projector S.A. would additionally continue to be responsible for the performance of the charterparty and the Charterers payment obligations. I consider that Tristar Petroleum S.A. is a correct and valid defendant to the claim of Seamus Holdings S.A.

14.   I have also read the statements provided by Mr Michael Kennefick for Projector S.A. and by Mr Salem Mounzer on behalf of Tristar Petroleum S.A. and although I do not wish to engage in any advocacy I must say that I cannot take their contents at face value since they have not dared to disclose in any way the alleged internal communications between Projector and Tristar nor have they described in any way whatsoever the use that they have made of the assigned charterparty in their name and the benefit that they have obtained. In my view, Tristar Petroleum S.A. are trying to have their whole cake and eat it too. This is neither fair nor is it in accordance with the facts as they happened.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed at (Piraeus, Greece) on July 9, 2008

_____
(Date)